**William LEE, Appellant,**

v.

**HOUSEHOLD FINANCE CORPORATION, a corporation, Appellee.**

**No. 4822.**

District of Columbia Court of Appeals.

Argued Feb. 2, 1970.

Decided March 31, 1970.

Lawrence P. Lataif, Washington, D. C., for appellant.

Harry Protas, Washington, D. C., with whom Robert L. Kay, Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, and FICK-LING and NEBEKER, Associate Judges.

FICKLING, Associate Judge:

This is an action for the recovery of the balance due on an "installment sales agreement (conditional sales contract)" entered into by the appellant, Lee, and Brown's Furniture Center, Inc. (Brown's), the assignor to the appellee, Household Finance Corporation (HFC).

Mr. Lee's daughter and her husband were unable to purchase a sectional sofa which they had selected at Brown's because they lacked the required credit standing. As a result Mr. Lee went to Brown's on October 21, 1966, agreed to purchase the sofa for his daughter and son-in-law, and entered into the contract in issue. This contract provided for a cash price of $400 less the down payment of $25, plus a sales tax of $12, and insurance premium of $7.03, and a finance charge and fee for related services in the amount of $94.56, producing a time balance of $488.59. Brown's assigned the contract to HFC without recourse on the same day of its execution, and the sofa was delivered that day to the home of the daughter and son-in-law, who lived at a different address than that of Mr. Lee. Brown's salesman testified that the actual cash price of the sofa was $320 which represented a 20% discount from the $400 cash price quoted in the agreement.[1]

---

1. This testimony was admitted into evidence over the objection of HFC which argued that it violated the parol evidence rule. We think the admission of this evidence was proper. By its terms, the rule, which is codified in D.C.Code 1967,

HFC had approved Mr. Lee's credit prior to the day of assignment and paid Brown's $402.48 for the contract. Also, it had purchased 300 similar contracts from Brown's within the past 2 years.

Upon Mr. Lee's default, this litigation followed and was concluded in a judgment by the trial court for HFC.

The question raised on appeal is whether this conditional sales contract was in fact and law a loan which bore a usurious rate of interest.

■ A cash sale accompanied by a loan bearing a usurious rate of interest is condemned by our courts. And a purported sale on credit will not be allowed to cloak a usurious loan. If the contract of sale on deferred payments is but colorable and the real transaction a loan providing for illegal profit, it will be held usurious. The determination of whether a transaction is a loan and forbearance or a sale on time or credit is controlled by the intention of the parties, and each case must be decided on its particular facts. Whether the transaction constitutes a sale at a time price or a loan and a cloak for usury generally is a question for the finder of fact. Beatty v. Franklin Investment Co., 115 U.S.App.D.C. 311, 319 F.2d 712 (1963); Calvert Credit Corp. v. Williams, D.C.App., 256 A.2d 902 (1969). And findings of fact will not be disturbed on appeal unless clearly erroneous. *E. g.,* Freas v. Gitomer, D.C.App., 256 A.2d 573 (1969); D.C.Code 1967, § 17–305(a).

■ With these rules in mind, we are convinced that the undisputed evidence demonstrates, as a matter of fact and of law, that the transaction was a loan and a cloak for usury. Any finding to the contrary by the trial court was clear error[2] and we reverse the judgment below.

It is abundantly plain to us that the so-called cash price listed on the agreement, and used by Brown's as the basis for computing the time balance owed, was nothing of the kind. By Brown's salesman's own admission, the true cash price was 20% less than $400, or $320. Obviously, the $80 was not added to the cash price to compensate Brown's for selling on credit because that would have been the purpose of the $94.56 finance charge and fee for related services. Moreover, we think the evidence shows that the credit terms were pre-arranged with HFC and that Brown's merely received its cash price ($320) plus a fee of $82.48 for transacting the loan, without any further responsibility, and did not contemplate an enlarged credit price sale when the contract was executed.[3]

Further evidence that the transaction was not intended to be a bona fide sale at a time price is the fact that the contract provided that the sofa be kept on Mr. Lee's premises and not moved without the written consent of the seller or the seller's assigns. It is apparent that Brown's never intended to protect its right of repossession under the contract when it delivered the sofa directly to Mr. Lee's daughter's house, where it could be moved at the will of the daughter and her husband.

Without a doubt, a charge of $174.56 on a loan of $314.03 is greater than a 50% rate of interest, is illegal, and cannot be recovered.[4]

---

§ 28:2–202, excludes evidence of any prior or oral contemporaneous *agreement.* The evidence objected to here was clearly outside the scope of the plain language of the rule.

2. It is unfortunate that the trial court did not find the facts specially and state separately its conclusions thereon as allowed, but not required, by GS Civ.Rule 52(b). Since, however, it entered "judgment on the findings for plaintiff [HFC]," there can be no doubt that it found as a fact that the transaction was a credit sale.

3. *See* Beatty v. Franklin Investment Co., 115 U.S.App.D.C. 311, 319 F.2d 712 (1963).

4. *Id.*

Therefore, we remand the case to the court below to determine the amounts paid on the agreement and the balance due, if any, after such payments and after all the interest, legal or otherwise is eliminated, and to enter judgment accordingly.[5]

Reversed and remanded with instructions.

---

5. *Id.*; D.C.Code 1967, §§ 28–3303, 3305.

